IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL DOUGLAS REED,       §
CID # 1013593,                §
      PETITIONER,          §
                           §
V.                          §          NO. 3:03-CV-836-R
                           §
DOUGLAS DRETKE, DIRECTOR,   §
TEXAS DEPARTMENT OF CRIMINAL  §
JUSTICE, CORRECTIONAL        §
INSTITUTIONS DIVISION,        §
      RESPONDENT.         §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject

cause has previously been referred to the United States Magistrate Judge.  The findings, conclusions,

and recommendation of the Magistrate Judge are as follows:

**I. BACKGROUND**

**A.  Nature of the Case:**  This is a petition for writ of habeas corpus by a state prisoner under

28 U.S.C. § 2254.

**B.  Parties:**  Petitioner Michael Douglas Reed is an inmate currently incarcerated in the

Texas Department of Criminal Justice, Correctional Institutions Division.  Respondent Douglas

Dretke is the Director of the Texas Department of Criminal Justice, Correctional Institutions

Division.

**C.  Factual and Procedural History:**  A jury found Reed guilty of murder and assessed his

punishment at 99 years' confinement.[1]  (C.R. at 98.)  As thoroughly recited by the state court of

---

[1]  The trial court additionally revoked Reed's probated sentences for three prior offenses and
sentenced him to two years' confinement in each case.  Reed does not challenge these probation revocations

appeals, the facts of the offense are as follows:

On the afternoon of April 20, 1999, [Reed's] sister Keisha Deshun Reed came home to the house where she lived with her grandmother, decedent Jessie Lee Reed. When she tried to open the front door, Keisha discovered the bottom lock was locked. The custom among the family was to lock the top lock because no one had a key to the bottom lock. Keisha tried using her cell phone to call [her grandmother] because she saw [her] car in the driveway and assumed she was inside. Keisha could hear the phone inside ringing, but there was no answer. Keisha noticed there was a lot of blood on the right side of the front door, and she called a friend on the phone. While talking to her friend, Keisha walked to the back of the house, pushed the back door open, and saw [her grandmother] on the kitchen floor. Keisha called 911. The police arrived and surrounded the area with yellow tape. Sometime after the police arrived, [Reed] came to the house. Police took Keisha, [Reed], [Reed's other] sister Crystal Reed, and [Jessie's] husband, Lloyd Reed, to the police station for questioning. [Reed] was subsequently charged with murdering . . . his grandmother.

At trial, Keisha testified that the three separate phone lines in [her grandmother's] house were pulled out of the wall, leading her to the conclusion that whoever killed [her grandmother] was familiar with the house. Lloyd, [Reed's] grandfather, testified [Reed] came to live with Lloyd and [Jessie] in 1990. In the time before the murder, [Reed] began missing school and became uncooperative and disagreeable. [Jessie] attempted to interest [Reed] in church and school, but [Reed] was not responsive to her efforts. On April 15, 1999, Lloyd told [Reed] he could no longer live with Lloyd and [Jessie], and he asked for [Reed's] house key. [Reed] gave Lloyd the key and went in the house and turned on the television. Fifteen minutes later, someone drove up and honked, and [Reed] came out and got in the car and left. Lloyd did not see [Reed] again until April 20 at police headquarters.

Dallas police officer Alexander Tarrant testified he was called to the murder scene on April 20. Tarrant looked inside the back door of the house and saw [Jessie], but he did not go inside the house because he did not want to tamper with the evidence inside. Tarrant saw [Reed] approaching the back of the house, and he had to wrestle [Reed] to the ground to keep him from going inside. [Reed] told Tarrant, "I need to get back in there. I want to see her." Tarrant testified none of the other family members attempted to enter the house. Tarrant escorted [Reed] to the front yard where a crowd was gathered, and he watched [Reed] to make sure he did not enter the house. Tarrant noticed [Reed] had band aids on several fingers and was putting his hands in his pockets.

Dallas police physical evidence detective James R. Smith testified a knife

in the instant habeas action. (Federal Pet. at 2.)

blade with no handle was found next to and under [Jessie's] face. Smith found a bloody palm print on a wall in the house and cut the print out of the wall so it could be tested. Smith later determined the palm print was [Reed's]. Smith further testified [Reed] had cuts on the middle fingers of both hands. Carolyn Van Winkle, a senior forensic DNA analyst at the Tarrant [C]ounty medical examiner's office, testified that DNA analysis showed blood from the front of a drawer at the murder scene was [Reed's]. Van Winkle further testified that blood found on [Reed's] pants and sock matched [Jessie's]. According to Van Winkle, the probability of selecting an unrelated individual at random who matched the DNA banding patterns she analyzed was one in six billion. Dr. Sheila Spotswood, a Dallas [C]ounty medical examiner, testified she conducted the autopsy on [Jessie] and determined [Jessie] had four stab wounds and approximately twelve cuts scattered over her face and scalp and thirty cuts on the rest of [her] body. [Jessie] also had a knife blade broken off inside her body.

Roderick Smith testified he had known [Reed] for approximately five years. On the day of the murder, he testified, he rode his bike to a gym at approximately 3:00 p.m. and saw [Reed] there. About thirty minutes later, Smith's sister came to the gym, and Smith and [Reed] went to [Jessie's] house and saw a crowd gathered outside. Smith testified [Reed] tried to go to the back of the house, but he was not wrestled to the ground. Instead, Officer Tarrant stopped [Reed] at the gate and turned him away. Smith later saw [Reed] crying as he sat on the curb near the driveway entrance.

Christopher Mays testified he had known [Reed] for about three years. On the day of the murder, [Reed] came to Mays's[s] house at approximately 11:30 a.m. and went with him to a store and to a gym at a nearby recreation center. Mays and [Reed] played dominoes, and Mays left at about 2:00 or 3:00 p.m. [Reed] was still at the recreation center when Mays left.

*Reed v. State*, Nos. 5-00-1809, 1810, 1811, 1812-CR, 2002 WL 57256, at *1-2 (Tex. App.—Dallas Jan. 16, 2002, pet. ref'd) (not designated for publication).

The Fifth District Court of Appeals affirmed the trial court's judgments, and the Texas Court of Criminal Appeals refused Reed's pro se petition for discretionary review on April 24, 2002. *Id.* Reed did not file a petition for writ of certiorari or a state application for habeas corpus relief. (Federal Pet. at 3.) Reed filed his federal petition for writ of habeas corpus in the United States District Court for the Northern District of Texas, Dallas Division, on April 12, 2003.

**D. Issues:**  Reed argues that

1.      the evidence is legally insufficient to sustain his conviction and

2.      the State impermissibly commented on Reed's failure to testify.

**E. Exhaustion:**  Dretke believes Reed has sufficiently exhausted available state remedies

on all issues presented and, thus, does not move for dismissal on this ground.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under

a state court judgment shall not be granted with respect to any claim that was adjudicated on the

merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal

law or (2) resulted in a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly

established federal law if the state court arrives at a conclusion opposite to that reached by the

United States Supreme Court on a question of law or if the state court decides a case differently than

the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S.

362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532

U.S. 1039 (2001).  A state court decision will be an unreasonable application of clearly established

precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the

facts of the case.  *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46

(5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall

be presumed to be correct.  The applicant has the burden of rebutting this presumption of correctness

by clear and convincing evidence.  *Hill*, 210 F.3d at 485.

## III. SUFFICIENCY OF THE EVIDENCE

Reed argues that the evidence is legally insufficient to support every element of the offense. To review the legal sufficiency of the evidence, a federal court must consider whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).  All credibility choices and conflicting inferences are to be resolved in favor of the fact-finder.  *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied*, 531 U.S. 822 (2000).  This court must determine if the evidence is constitutionally sufficient to support the conviction, i.e., whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law."  *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991) (quoting *Jackson*, 443 U.S. at 324 n.16).  In addition, a federal habeas court must give great deference to a state court's determination of the sufficiency of the evidence and an appellate court's review of the sufficiency of the evidence.  *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 510 U.S. 1141 (1994); *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir.), *cert. denied*, 474 U.S. 855 (1985).

Relying on *Jackson*, the state intermediate appellate court held the evidence legally sufficient:

> In this case, the record shows [Reed] was prevented from entering the crime scene when he approached after [Jessie] was discovered.  Nevertheless, DNA tests indicated [Reed's] blood was on a drawer inside the house, and [Jessie's] blood was present on [Reed's] sock and pants.  In addition, [Reed's] bloody palm print was on a wall inside the house. [Reed] had cuts on the middle fingers of both hands, a knife blade with no handle was found next to and under [Jessie's] face, and a knife blade was broken off inside her body. [Jessie] had four stab wounds and approximately twelve cuts scattered over her face and scalp and thirty cuts on the rest of her body.

5

> [Reed] presented his friends' testimony that he went to Mays'[s] house from 11:40 a.m. and then went to a store and the recreation center where he remained until accompanying Smith to [Jessie's] house.  However the jury listened to all the testimony and was free to disbelieve [Reed's] friends and believe that [Reed] left his bloody palm print on the wall, left blood on a drawer, and got [Jessie's] blood on his pants and sock in the course of murdering [Jessie]. . . .  After reviewing the entire record, we conclude the evidence is legally and factually sufficient to support [Reed's] murder conviction.

*Reed*, 2002 WL 57256, at \*3.  The Court of Criminal Appeals refused Reed's petition for discretionary review on this issue.  This determination was not in conflict with clearly established federal law nor was it based on an unreasonable determination of the facts in light of the evidence.  *E.g., Ramirez v. Dretke*, 398 F.3d 691, 693-95 (5th Cir. 2005).  Reed is not entitled to habeas relief.  28 U.S.C. § 2254(d).

## IV. COMMENT ON FAILURE TO TESTIFY

Reed argues that the State's remarks during closing jury argument at the guilt-innocence phase of the trial improperly commented on Reed's failure to testify:

> Think about all the things [defense counsel] is finding fault with in the State's evidence.  And then look at the big picture.  Who would have so much blood on their clothes in the course of a day?  Have we heard some other explanation about how that blood would get there, whether it's hers or it's his? (8 R.R. at 64-65.)

The trial court overruled defense counsel's objection to this statement.  (*Id.* at 65.)

The Fifth Amendment provides that no person shall be compelled to be a witness against himself in any criminal case.  U.S. CONST. amend. V.  It further prohibits a trial court, a prosecutor, or a witness from commenting upon a defendant's failure to testify in a criminal trial.  *United States v. Rocha*, 916 F.2d 219, 232 (5th Cir. 1990).  If the State's argument impermissibly comments on the defendant's failure to testify, this court asks whether the statement "was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the

failure of the accused to testify." *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988).

The intermediate state appellate court held that the State's argument was proper:

> Under the circumstances of this case, we conclude the complained-of statement was a proper response to arguments made by [Reed's] counsel. In context, it appears the State was arguing that, regardless of the source of the blood, it was unusual that [Reed] had *any* blood on his clothes. The State did not in any way fault [Reed] for exercising his right not to testify. . . . Because the State's argument was proper, the trial court did not abuse its discretion in overruling [Reed's] objection.

*Reed*, 2002 WL 57256, at *4. This determination was not in conflict with clearly established federal law nor was it based on an unreasonable determination of the facts in light of the evidence. Indeed, the Fifth Amendment is not violated by this type of argument. *United States v. Robinson*, 485 U.S. 25, 31-34 (1988); *Beathard v. Johnson*, 177 F.3d 340, 350-51 (5th Cir.), *cert. denied*, 528 U.S. 954 (1999). Reed is not entitled to habeas relief. 28 U.S.C. § 2254(d).

## V. SUMMARY

Reed is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination that Reed was not entitled to relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## VI. EVIDENTIARY HEARING

Upon review of the pleadings filed and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary. RULES GOVERNING SECTION 2254 CASES 8(a).

## VII. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** the request for habeas corpus relief brought under 28 U.S.C. § 2254.

SIGNED April 29, 2005.

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Under 28 U.S. C. § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. Failure to file written objection to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE